UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

_____

PYOTR SHMELEV,                                              Civil No. 11-2042 (JRT/LIB)

                Petitioner,

v.                                                                        **REPORT AND**
                                                                         **RECOMMENDATION**

TOM ROY,

                Respondent.

_____

      This matter is before the undersigned United States Magistrate Judge on Petitioner's

application for habeas corpus relief pursuant to 28. U.S.C. 2254.  The case has been referred to

this Court for a Report and Recommendation pursuant to 28 U.S.C. 636 and Local Rule 72.1.

Petitioner Pyotr Shmelev ("Petitioner") is a prisoner at the Minnesota Correctional Facility at

Lino Lakes, Minnesota.  For the reasons set forth below, the Court recommends that the Petition

for Writ of Habeas Corpus be DENIED.

**I.      BACKGROUND**

      Petitioner was sentenced to 360 months of imprisonment for Second Degree Intentional

Murder.   The present Petition for a writ of habeas corpus arises from Petitioner's conviction for

a disciplinary violation while incarcerated that added 6 days to the Petitioner's sentence.

      On March 1, 2006, Petitioner's cell at the Minnesota Correctional Facility – Stillwater,

where he was incarcerated at that time, was searched by prison officials.  Shmelev v. Fabian,

2010 WL 3397327, at *10 (Minn. Ct. App. Aug. 31, 2010).  The following items were found

during the search: "(1) a file of 68 items referring to online stock trading, (2) discipline

information showing that appellant was removed from a work assignment in 2004 for misuse of

facility computers, (3) items that include computer language and programs designed to bypass

computer security, (4) a box of Sudafedrine containing 20 tablets and three items containing chemical compounds and mixtures, (5) a file with computer generated items in a Russian dialect, and (6) a pencil sharpener." Id. (citations omitted).

On March 7, 2006, a prison hearing officer held an administrative disciplinary hearing. Id. Ultimately, Petitioner was found guilty of violating Department of Corrections ("DOC") rules 170, 190, and 386, and he was sentenced to 20 days of segregation and 6 days of extended incarceration. Id. The warden denied Petitioner's appeal from the results of the disciplinary hearing. Id.

Thereafter, in July 2006, Petitioner moved the Minnesota state district court for a writ of habeas corpus arguing that his incarceration was extended in violation of his right to procedural due process. Id. The state district court upheld the disciplinary hearing officer's finding, but this decision was overturned, in part, by the Minnesota State Court of Appeals. Id. The state Court of Appeals found that the state district court erred by not holding an evidentiary hearing and remanded the case for such a hearing. Id.

In October 2009, the state district court held an evidentiary hearing and denied Petitioner's habeas petition. Id. at *2. Once again, Petitioner appealed his decision to the Minnesota State Court of Appeals. Id. This time, however, the state Court of Appeals upheld the district court's denial of the petition. Id.

Presently, the Petitioner challenges the conclusions of the prison disciplinary hearing on three grounds. First, the Petitioner contends that the disciplinary hearing officer's finding upheld by the state courts violated his constitutional right to procedural due process because it wrongly found that "any prison correspondence containing internet printouts could be treated as contraband regardless of absence of security risk," a finding that Petitioner maintains was

contrary to the evidence. (Pet's Mem. [Docket No. 8], p. 3).  Second, the Petitioner argues that

his constitutional right to due process was violated because prison officials failed to disclose

exculpatory evidence and prevented him from calling a key witness.  (Pet's Mem., p. 7).  Third,

Petitioner asserts that his due process rights were violated because the state district court

"changed the reason for the disciplinary conviction from the reason reflected in the prison

hearing report."  (Pet's Mem., p. 12).   The Court considers the Petitioner's arguments below.

## II.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) instructs federal

courts to engage in a "limited and deferential review of underlying state court decisions."  Mark

v. Ault, 498 F.3d 775, 782–83 (8th Cir. 2007). Under the AEDPA, relief may not be granted to

the petitioner unless the state court's decision:

> (1) resulted in a decision that was "contrary to, or involved an unreasonable application
> of, clearly established Federal law, as determined by the Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in
> light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Federal courts consider a decision "contrary to" precedent when a state court "arrives at a

conclusion opposite to that reached by the [U.S. Supreme] Court on a question of law" or decides

a case differently than the Supreme Court has on a set of materially indistinguishable facts.

Williams v. Taylor, 529 U.S. 362, 413 (2000). An "unreasonable application" of federal law

exists when the state court "correctly identifies the governing legal rule but applies it

unreasonably to the facts of a particular prisoner's case." Id. at 408.  Federal courts "may not

issue the writ simply because it 'concludes in its independent judgment that the relevant state-

court decision applied clearly established federal law erroneously or incorrectly. Rather, that

application must also be unreasonable.'" Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005) (quoting Williams, 529 U.S. at 411)). During review of state court decisions, a "federal court also presumes that the state court's factual determinations are correct." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000). A petitioner can only rebut this presumption by "clear and convincing evidence." Id.; 28 U.S.C. § 2254(e)(1).

## III.   DISCUSSION

### A.   Ground One:  Finding that the Internet Printouts were Contraband

The disciplinary hearing officer concluded that Petitioner possessed documents that "may have the potential to interfere with the security of the institution and may have the potential to circumvent the institution's current telephone system and the institution's ability to monitor offender telephone conversations." (Fink Aff., App. C.44).  Such documents were "from a company/service called 'Skype,' which included several pages outlining the terms of service from the company" according to the hearing officer.  Id. As such, the hearing officer found that "it is more likely than not that [Petitioner] was trying to interfere with the institution's current phone system. As a result, he is found in violation based [on] a preponderance of evidence."  Id.

On the basis of these finding, the disciplinary hearing officer added 6 days to the Petitioner's sentence for violating DOC rule 386 which states that "No offender shall possess any stolen or unauthorized property."[1]  The DOC's rules further define contraband as:

> any items which have been altered, anything unauthorized, authorized items in excess of allowed limits, items for which a specific offender does not have authorized possession, items in other than an authorized area and/or items specifically directed by staff to be removed from the facility or stored for safe keeping.

DOC Rule 380.

---

[1] Petitioner was also charged with violating DOC Rule 190 and 170.  However, his extended sentence, the subject of this habeas petition, was only imposed for a violation of DOC Rule 386.  (Fink Aff. [Docket No. 7], App. C.36, 43).

After an evidentiary hearing following remand from the Minnesota State Court of Appeals, the Washington County state district court reasoned that the violations of DOC rule 386 were premised on Plaintiff's possession of "28 pages of computer-generated material" including documents explaining how to place telephone calls over the internet through Skype.com and documents "discussing how to by-pass security systems." (Fink Aff., App. B.3). Because these documents were not included in the DOC's allowable-property list and were not specifically allowed by the warden, they were properly considered contraband. (Fink Aff., App. B.4).

Subsequently, the Minnesota State Court of Appeals upheld the lower state court's decision and found that the state district court's decision was supported by some evidence in the record. Specifically, the state Court of Appeals noted that the "[t]he allowable-property list was introduced into evidence in the district court, and the prison hearing officer testified about her application of DOC rule 386, division directive 302.250, and the allowable-property list to the facts presented to her. This evidence supports the hearing officer's finding that the documents possessed by [Petitioner] are contraband." Shmelev, 2010 WL 3397327, at *3.

Additionally, the Minnesota State Court of Appeals concluded that some evidence supported the district court's conclusion that "the fact that the mailroom staff did not recognize multiple pages of detailed computer print-outs to be contraband did not mean that they were not." Id. *4. As noted by the Minnesota State Court of Appeals, the mailroom supervisor testified before the state district court and explained that she was not a security officer, that the mailroom receives "voluminous" quantities of mail, and that the mailroom is the "first level of inspection" to determine whether an item is contraband. Id. However, "mailroom personnel may not identify every item of contraband upon receipt and agreed that it is 'possible that some

items may come through the mailroom that are contraband when viewed in another context or when taken with other items.'"  Id.

       Petitioner argues that "[c]ontrary to all evidence produced at the trial court, the state courts found that the Skype printouts were unauthorized, and therefore, contraband, *regardless of security risk*."  (Petr's Mem., p. 4)(emphasis in original).  Petitioner contends that prison policies allow prisoners to possess legal and other materials, personal correspondence, published materials, internet printouts.  Id.  Petitioner maintains that the items found in his possession fall under these definitions and were therefore allowable.[2]

       To succeed on a due process claim, Petitioner must identify a protected liberty interest under the United States Constitution.  Wolff v. McDonnell, 418 U.S. 539, 557 (1974).  Courts define "liberty interest" to include freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).

       In this case, both parties agree that the addition of 6 days to the Petitioner's sentence imposes an atypical and significant hardship sufficient to create a constitutionally protected due

---

[2] Petitioner also argues that his prison disciplinary conviction violates the First Amendment.  Petitioner claims that the conclusions of the state trial court and the Minnesota State Court of Appeals mean that every internet printout possessed by a prisoner can be treated as contraband.  Such a conclusion, Petitioner argues, violates the First Amendment and Turner v. Safley, 482 U.S. 78 (1989) because in effect the interpretation of the DOC rules mean that prisoners could not ever possess any internet printouts, including court information.  This Court need not reach the substance of Petitioner's argument.

      The Minnesota State Court of Appeals found that this argument was not presented in Petitioner's original or amended state habeas petition, and therefore, it has not properly been preserved for review under Minnesota state procedural law as laid out in Roby v. State, 547 N.W.2d 354, 357 (Minn. 1996).  Shmelev, 2010 WL 3397327, at *6.  Any claim that the application of the prison's mail and contraband policies violate the Petitioner's First Amendment rights is procedurally defaulted and cannot be considered on federal habeas review. Hall v. Delo, 41 F.3d 1248, 1250 (8th Cir. 1994) ("A federal claim has not been fairly presented to the state courts," and is therefore procedurally defaulted, "when the state court has declined to decide the federal claim on the merits because the petitioner violated a state procedural law.")  To the extent that Petitioner argues that the Minnesota State Court of Appeals improperly determined that his First Amendment claim was not properly raised at the state level, such a claim must fail because a federal court on habeas review cannot second guess the Minnesota State Court of Appeals' application of its own state procedural law. See Murray v. Hvass, 269 F.3d 896, 899 (8th Cir. 2001).

process interest. Thus, the relevant question is whether the Respondent's actions violated the due process clause.

The federal due process clause requires that a prison disciplinary board establish its factual findings at the hearing using "some evidence" as the standard of proof. Goff v. Dailey, 991 F.2d 1437, 1441 (8th Cir. 1993). This standard is lower than the state standard set forth by Minnesota which requires that a hearing officer must find "by a preponderance of the evidence that . . . [a prisoner] has committed a disciplinary offense. . ." Carrillo v. Fabian, 701 N.W.2d.763, 777 (Minn. 2005).

The federal "some evidence" standard is met if:

there was some evidence from which the conclusion of the administrative tribunal could be deduced....' Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Superintendent v. Hill, 472 U.S. 445, 455-56 (1985) (emphasis added) (citations omitted). Thus, the power of federal courts to review the decision of the prison disciplinary hearing officer is limited because "[t]he federal courts are not part of the appellate process for prison disciplinary proceedings." Toombs v. Hicks, 773 F.2d 995, 997 (8th Cir.1985) (citing Courtney v. Bishop, 409 F.2d 1185, 1187 (8th Cir. 1969)).

Here, the Court agrees with the Minnesota State Court of Appeals that the conclusion of the prison disciplinary hearing officer that the prisoner violated DOC rule 386 met the "some evidence" standard of review. At the hearing, the prison disciplinary hearing officer reviewed multiple pages of paperwork and web materials that were taken from the prisoner's cell. (Fink Aff., App. C. 44). The prison disciplinary hearing officer also heard testimony from Andrey Okishev and the Petitioner. (Fink Aff., App. C.44). The hearing officer found that Mr.

Okishev's testimony contradicted the Petitioner's testimony explaining why he had the materials. Id.  The hearing officer concluded that the discrepancy harmed the Petitioner's credibility as to why he had the documents in his possession.  Id.   Moreover, the Incident Report, provided to the hearing officer which was read at the hearing, concluded that the security officers found in prisoner's cell computer language and programs "designed to bypass computer security" and 28 pages of "computer generated items ranging dates . . . Several of these items were from a web site and was in the Russian dialect."  (Fink Aff., App. C.40).  See Bandy-Bey v. Crist, 578 F.3d 763, 766  (8th Cir. 2009) ("A report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation.")

Subsequently, the state district court, based on its own evidentiary hearing, found that the violations of DOC rule 386 were based on the Petitioner's possession of computer generated material including information on how to place telephone calls over the internet through Skype and documents "discussing how to by-pass security systems."  (Fink Aff., App. B.3). Additionally, the state district court found that the documents possessed by the Petitioner were not included on the prison's allowable property list nor were the materials specifically allowed by the warden.  Consequently, the materials constituted contraband.  The Minnesota State Court of Appeals agreed with this conclusion.

Petitioner raises a number of arguments suggesting that the documents could not have constituted a security risk because the configuration of the prison phone and computer system did not allow prisoners to use Skype.  However, this argument misses the main thrust of the determination that the Petitioner was guilty of violating DOC Rule 386.  Whether the Petitioner could have actually bypassed security had no bearing on the prison hearing officer's conclusion.

Instead, the hearing officer was concerned with whether on the evidence before it the documents could potentially constitute a security risk and whether they were contraband.[3]  Both the hearing officer, Paula Thielen, and the discipline lieutenant, Michelle Smith, testified before the state district court that the information constituted a potential security risk.  (Fink Aff., App. B.16, 52).  Furthermore, other prison employees, including IT workers Schwartz and Jonas, and mailroom employee Perez, testified that they do not make determinations about whether an item poses a security risk, and therefore, their opinions about the security risk of the materials was not determinative. (Fink Aff., App. B.67, 71, 82).  Here, some evidence in the record supports the hearing officer's original conclusion that the items could potentially constitute a security risk and were contraband.   The conviction did not constitute a "decision that was based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2254(d).[4]

---

[3] Petitioner's argument that the prison disciplinary hearing officer had no knowledge about computers and was unqualified to make the determination about whether the documents constituted a security risk is similarly unconvincing.   The hearing officer did  not need knowledge about computers  or an expert on computers to make her determination, instead she properly relied on the report of the security officers that the documents could be used by the Petitioner to attempt to bypass security and other testimony at the hearing discrediting Petitioner's explanation for why he had the materials.

[4] Petitioner also contends that the printed materials constituted "legal and other papers" under the allowable property list because they were properly received in the mailroom rather than confiscated as contraband.  (Petr's Mem., p. 4). The Washington County  state district court concluded that "the fact that the mailroom staff did not recognize multiple pages of detailed computer print-outs to be contraband did not mean that they were not. Petitioner has not now (or ever previously) provided to this Court any policy stating that mailroom review laundered contraband into non-contraband. This sort of mailroom alchemy does not exist" (Fink Aff., App. B.5).  The Minnesota State Court of Appeals concurred and found that the district court's finding was supported by some evidence. Shmelev, 2010 WL 3397327, at *4.  Additionally, the state Court of Appeals concluded that the documents were not found on the allowable property list. Id.

This Court agrees.  While Ms. Perez testified that the mailroom did some initial screening of mail to determine whether it was allowed under prison rules, she also stated that "items of contraband are missed in the mailroom check." (Fink Aff., App. B.71).  Nor are mailroom workers security officers with authority to consider what constitutes a security risk or contraband.  Likewise, to the extent that the Petitioner argues that the Minnesota State Court of Appeals incorrectly interpreted or applied DOC Rule 386 and division directives 302.250 and 302.020 because the seized property constituted allowable property under them, this Court cannot consider such an argument on federal habeas review because the Court is constrained to considering federal constitutional questions. See Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (interpretation and application of state law is not subject to habeas corpus review); Lupien v. Clarke, 403 F.3d 615, 619 (8th Cir.2005) ("Determinations of state law made by a state court are binding on a federal court in habeas proceedings"); Bounds v. Delo, 151 F.3d 1116, 1118 (8th Cir. 1998).

**B.    Ground Two: Failure to Disclose Exculpatory Evidence and Petitioner Prevented from Calling Witness.**

**1.    Non-disclosure of Prison IT Report**

Petitioner contends that his due process rights were violated because a report prepared by Stillwater IT Specialist Sharon Jonas submitted to Lt. Smith was not submitted to either Petitioner or prison hearing officer Thielen.  (Petr's Mem., p. 7).  The report concluded that the materials confiscated from the prisoner were not a security risk.  Id.  Petitioner maintains that this information is especially relevant because hearing officer Thielen knew very little about computers.  Id. at 8.

As to this issue, the Respondent argues that the present habeas petition must be dismissed because it is procedurally defaulted.  The Court agrees.

In this case, the Petitioner contends that he first learned about the existence of the allegedly exculpatory report in 2009, long after his initial state petition for habeas corpus was filed in 2006.  (Petr's Supp. Mem., p. 3).  Thus, Petitioner claims he could not raise the issue in his initial state petition.  However, after learning about the report, Petitioner filed a motion in the state district court discussing the nondisclosure of Sharon Jonas' report.  Id., p. 3.  Petitioner additionally discussed the issue at the second evidentiary hearing in front of the Minnesota state district court.  (Fink Aff., App. B.12-13).  Both parties briefed the issue to the Minnesota State Court of Appeals.  (Fink Aff., App. A.42, 55-56).[5]  The Minnesota State Court of Appeals concluded that this claim was not properly alleged in Petitioner's original state habeas petition or his amended petition, and therefore, the issue was not properly preserved for state review.  Shmelev, 2010 WL 3397327, at *6 (citing Roby v. State, 547 N.W.2d 354, 357 (Minn. 1996)).

---

[5] In fact, the Respondent argued to the Minnesota Supreme Court that Petitioner did not properly raise the issue of disclosure of the Jonas Report to the Washington County state district court.  (Fink Aff., App. A.42).  According to the Respondent, the motion was not filed in conformance with Minn. R. Gen. Pract. 115.02.  Id.

However, Petitioner apparently believes that the state Court of Appeals incorrectly determined that this claim was not properly raised in the habeas petition in front of the Washington County district Court and erred in refusing to consider it on the merits.

"A federal claim has not been fairly presented to the state courts," and is therefore procedurally defaulted, "when the state court has declined to decide the federal claim on the merits because the petitioner violated a state procedural law." Hall, 41 F.3d at 1250; see also McCall v. Benson, 114 F.3d 754, 756–57 (8th Cir .1997) ("[A] federal court may usually only consider those claims which the petitioner has presented to the state courts in accordance with state procedural rules.")(citations omitted).  "[F]ederal courts do not look at whether state courts have correctly applied their own procedural rules.  They simply determine whether those procedural rules were applied to bar the claim." Clemons v. Luebbers, 381 F.3d 744, 751 (8th Cir. 2004).

A procedurally defaulted claim will not be considered in a federal habeas corpus proceeding unless the petitioner has shown "cause for the default and actual prejudice" excusing his procedural default or, in the alternative, that a "fundamental miscarriage of justice" would occur if the federal court refused to consider the claim. Coleman v. Thompson, 501 U.S. 722, 750 (1991).  "[C]ause under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him.... For example, a showing that the factual or legal basis for a claim was not reasonably available to counsel, ... or that some interference by officials'... made compliance impracticable, would constitute cause under this standard." Coleman, 501 U.S. at 753 (internal citations and quotations omitted).  The "fundamental miscarriage of justice" exception applies when a "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is

actually innocent.'" Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995) (emphasis added)(quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).  "In other words, the petitioner cannot simply point to errors that allegedly occurred during the course of his criminal prosecution; he must instead offer some new evidence which affirmatively demonstrates that he must truly be innocent of the crime for which he was convicted." Loye v. Roy, 2012 WL 435724, at *3 (D. Minn. Jan. 12, 2012)(quoting Cox v. Burger, 398 F.3d 1025, 1031 (8th Cir. 2005).

Here, the Minnesota State Court of Appeals denied Petitioner's claim of  failure to disclose exculpatory evidence solely on state procedural grounds, namely that the claim was not properly raised in his original habeas petition at the state district court level.  Thus, the claim is procedurally defaulted. [6]  See Wehmeyer v. Roy, 2011 WL 4390442, at *13 (D. Minn. Aug. 12, 2011) (finding claim procedurally defaulted when the Minnesota State Court of Appeals "clearly disposed" of the petitioner's claim "solely on state procedural grounds – namely because Petitioner had not adequately raised the claim in the trial court").  Petitioner may believe that the Minnesota State Court of Appeals somehow misapplied the Roby rule when deciding his claim was not properly raised.  However, that argument cannot be considered here because this Court

---

[6] Petitioner contends that the Respondent has waived his procedural default defense because it was not raised in his initial response.  However, the Court finds this argument unpersuasive.  Generally, "when a state fails to advance a procedural default argument, such argument is waived." Jones v. Norman, 633 F.3d 661, 666 (8th Cir. 2011).  While the Respondent did not address Petitioner's claim regarding the failure to disclose exculpatory evidence in its initial Response, that oversight was "obviously inadvertent" and based on a misreading of the original Petition. Id.; see also  Cagle v. Norris, 474 F.3d 1090, 1098 (8th Cir. 2007) ( "All federal circuit courts of appeal have 'held that, in appropriate circumstances, courts, on their own initiative, may raise a petitioner's procedural default.' ") (quoting Day v. McDonough, 547 U.S. 198 (2006)); King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001) (en banc) cert. denied, 535 U.S. 934 (2002) (holding the court has the discretion to consider issue of procedural default sua sponte); Graham v. Symmes, 2011 WL 2693659, at *13  (D. Minn. May 19, 2011)(finding court has discretion to consider procedural default sua sponte); Fudge v. Norris, 2008 WL 450385, at *10 (E.D. Ark., February 15, 2008) ("It is well established that a federal court may raise sua sponte the issue of procedural bar.")  The Respondent misconstrued ground three in the Petition as challenging the Respondent's failure to give the Petitioner a copy of the hearing officer's findings rather than challenging the failure to disclose exculpatory evidence.  (Response [Docket No. 6], p. 13).  However, after the Court notified the Respondent of his error and requested a supplemental brief addressing the issue, the Respondent fully briefed and addressed the procedural default argument in its supplemental brief.

cannot review and overturn a state court's application of a state procedural rule.  Murray v.

Hvass, 269 F.3d at 899 ("it is not the province of a federal court to decide whether a matter ought

to be considered procedurally defaulted under state law"); May v. Iowa, 251 F.3d 713, 716 (8th

Cir. 2001) ("[w]e may not disturb a state court decision interpreting state law on habeas review

... and thus we reject [the petitioner's] contention that he did not default his three ineffective

assistance of counsel claims").

Moreover, the Petitioner has not demonstrated cause and prejudice or a fundamental

miscarriage of justice excusing his procedural default.  To meet the "cause requirement," a

petitioner must demonstrate that some external impediment prevented him from presenting his

claims to the Minnesota State Supreme Court in a procedurally proper manner.  Coleman, 501

U.S. at 753.   Here, no such cause has been presented.  Because a federal Court need not consider

the prejudice exception if the cause component has not been met, Petitioner cannot rely upon this

exception to overcome the procedural default.  Ashker v. Class, 152 F.3d 863, 871 (8th Cir.

1998) (when petitioner "has not shown adequate cause to overcome the procedural bar . . . we

need not consider the issue of actual prejudice").

Likewise, Petitioner has not presented any new evidence that he is actually innocent of

the crime for which he was convicted as required to meet the fundamental miscarriage of justice

exception.  Here, no new evidence of which Petitioner was unaware at the time of the state court

evidentiary hearing has been presented.  As such, the fundamental miscarriage of justice

exception to the procedural default rule does not apply.

Thus, the Court recommends that the Petitioner's writ for habeas corpus be denied as to

this issue.

**2.      Failure to Call Petitioner's Witness at the Prison Disciplinary Hearing**

Next, Petitioner contends that the Respondent violated his due process rights when it failed to notify Gary Schwartz that Petitioner wanted him to testify at the prison disciplinary hearing. (Petr's Mem., p. 9). Mr. Schwartz was a material manager for MinnCorr and served as Petitioner's supervisor at his prison job. (Fink Aff., App. B.73). Mr. Schwartz testified at the state district court evidentiary hearing that he "used computer in my work all my life. You know, I'm pretty good with them." Id. Mr. Schwartz also stated that he had been willing to appear at the prison hearing. (Petr's Mem., p. 9). However, in direct contradiction to Mr. Schwartz's, Lt. Smith testified that Schwartz had informed her that he was unwilling to testify. Id. After considering this evidentiary dispute, the Washington County state district court found Schwartz's testimony to be credible and that the failure to allow Petitioner to call him as a witness constituted a due process violation, but concluded that the failure to call Schwartz to testify was a harmless error.

On appellate review, the Minnesota State Court of Appeals agreed that the Respondents' failure to produce Gary Schwartz for the prison disciplinary hearing was harmless error. Shmelev, 2010 WL 3397327, at *4-5. In making its decision, the Minnesota State Court of Appeals noted that Mr. Schwartz testified that he did not have the "authority nor the expertise to determine whether the documents [Petitioner] possessed were contraband" and therefore, his testimony would not have changed the outcome of the hearing. Id. at *5. The Minnesota State Court of Appeals rejected Petitioner's argument that the witness's testimony that inmates do not have access to the internet and cannot access Skype would have demonstrated that the documents discovered in his possession could not possibly constitute a security risk. In particular, the Minnesota State Court of Appeals noted that a "document need not be a security risk to be considered contraband . . . In light of [the state district court's] findings, it did not matter whether

[Petitioner] could access the internet." Id.

"The Supreme Court has outlined procedures correctional facilities must follow to conduct an impartial due process hearing on a disciplinary matter." Hartsfield v. Nichols, 511 F.3d 826, 830 (8th Cir. 2008) (citing Wolff v. McDonnell, 418 U.S. 539, 563–66 (1974)). According to Wolff, a prisoner is entitled to receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action." Hill, 472 U.S. at 454.

Moreover, in the prison disciplinary setting, "even if a prison official's action created a potential due process violation, a habeas petitioner needs to demonstrate that he was harmed by the violation in order to obtain relief." Adams v. Fed'l Bureau of Prisons, 2011 WL 7293381, at *2 (D. Minn. Dec. 6, 2011)(citing Jordan v. Zych, 2011 WL 2447937, at *4 (W.D. Va. Jun. 15, 2011)); see also Powell v. Coughlin, 953 F.2d 744, 750 (2nd Cir. 1991) ("it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial"); Piggie v. Cotton, 344 F.3d 674, 678 (7th Cir. 2003) (finding that due process violation constituted harmless error because prisoner failed to explain how excluded testimony would have aided his defense against disciplinary charges); Pilgrim v. Luther, 571 F.3d 201, 206 (2nd Cir. 2009) ("a prisoner is entitled to assistance in 'marshaling evidence and presenting a defense,' " but "any violations of this qualified right are reviewed for 'harmless error' "); Grossman v. Bruce, 447 F.3d 801, 805 (10th Cir. 2006) ("errors made by prison officials in denying witness testimony at official hearings are subject to harmless error review").

In 28 U.S.C. § 2254 cases, "federal courts may not grant relief unless the state trial error had a substantial and injurious effect or influence in determining the [judge's] verdict." Jackson v. Norris, 573 F.3d 856, 858 (8th Cir. 2009)(quotations and citations omitted).  A relievable error in a 28 U.S.C. § 2254 case occurs when "the court finds itself in grave doubt about the effect of the error on the jury's verdict." Toua Hong Chang v. Minnesota, 521 F.3d 828, 832 (8th Cir. 2008)(citations and quotations omitted).

In this case, contrary to the Petitioner's assertions, the exclusion of Mr. Schwartz's testimony from the prison disciplinary hearing did not have "substantial and injurious effect" on the disciplinary finding in this case.  Petitioner contends that the primary value of Mr. Schwartz's testimony was his ability to explain the nature of the potential security threat of the documents seized from the prisoner's cell and educate the prison hearing officer about computers.   However, Mr. Schwartz testified at the evidentiary hearing that he had no authority to determine whether items in the prison constitute a security risk or to determine whether an item was contraband.  Thus, his opinion about whether the documents constituted a security risk would have little, if any value.   In fact, Mr. Schwarz, from the record before the Court, was not involved in the investigation of the seized material at all and testified that he did not even know what Skype was.  (Fink Aff., App. B.74).  The only role that Mr. Schwartz could have had at the disciplinary proceeding, based on Petitioner's characterization, was that of something akin to an expert witness used to describe computers and whether the documents found in Petitioner's cell could possibly be used to bypass it.   However, this putative testimony was irrelevant to the ultimate finding that the Petitioner possessed contraband which is defined by the prison rules as any item not approved by the warden or found on a list of approved items.[7]

---

[7] On the whole, the Petitioner seems to take issue with the fact that he was convicted for possessing contraband, while at the same time the prison disciplinary hearing officer found that the items in his possession could also

Even if the Minnesota State Court of Appeals' application of the harmless error analysis applied federal law erroneously or incorrectly, the application "must also be unreasonable." Lyons, 403 F.3d at 595; see also Mitchell v. Esparza, 540 U.S. 12, 17 (2003) ("habeas relief is appropriate only if the [state court] applied harmless-error review in an 'objectively unreasonable' manner"). Thus, this Court concludes that the Minnesota State Court of Appeals decision upholding the district court's finding that the exclusion of Mr. Schwartz's testimony from the initial disciplinary hearing was harmless error did not constitute an "objectively unreasonable" application of federal law and did not substantially influence the disciplinary hearing's conclusion. The Court does not find itself harboring any "grave doubts" about the effect of the error on the Petitioner's original disciplinary conviction. As such, the Court recommends that Petitioner's writ of habeas corpus be denied as to this issue.

**C.          Ground Three:   State District Court Changed Reason For Disciplinary Conviction**

The Washington County state district court rejected Petitioner's argument "that [since] he was physically unable to make Skype phone calls [then] his possession of the papers in question were not a 'security risk.'" (Fink Aff., App. B.6). The Washington County state district court concluded that:

> whether or not possession of the pages was an imminent or actual security risk is not relevant. It is clear that the materials were contraband because they were not specifically allowed by the warden and they are not on the allowed list. The fact that they were analyzed as something that could be used (or perhaps were being used) to interfere with the prison's security is really secondary to their actual nature. Relevant here is that there

---

constitute a "security risk." The Minnesota State Court of Appeals found that under the prison rules governing prison discipline a document does not need to constitute a security risk to be considered contraband. Shmelev, 2010 WL 3397327, at *4-5. Petitioner appears to disagree and argues that the rules governing prison discipline should require that an item should only be considered contraband if it in fact is shown to present a security risk. To the extent that the Petitioner disagrees with this interpretation of Minnesota law governing the possession of contraband in state prisons, the Court cannot overturn a state's interpretation of state law on federal habeas corpus review. See Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (interpretation and application of state law is not subject to habeas corpus review); Lupien v. Clarke, 403 F.3d 615, 619 (8th Cir.2005) ("Determinations of state law made by a state court are binding on a federal court in habeas proceedings"); Bounds v. Delo, 151 F.3d 1116, 1118 (8th Cir. 1998).

> were two types of materials found to be contraband.  The first type was the Skype materials.  The second type were documents that the hearing officer found to be computer documents whose contents described how to by-pass computer security systems.  An item need not be a present or immediate security risk to be contraband.

Id.

Petitioner maintains that the Washington County state district court, therefore, improperly changed the reason for Petitioner's conviction from the reason provided at the prison disciplinary hearing.  (Petr's Mem., p. 12).  According to the Petitioner, the prison disciplinary hearing officer concluded that the Skype printouts presented a security risk, while the state district court found that the security risk of the Skype printouts was not a factor in the prison's original disciplinary decision.  Id.

Wolff v. McDonnell requires the fact finder to provide a written statement setting forth "the reasons for the disciplinary actions taken." 418 U.S. at 564. This requirement serves two purposes:

> First, the requirement prevents arbitrary action by disciplinary boards; it 'helps to insure that administrators will act fairly.' Second, the written statement requirement facilitates review of the disciplinary proceeding by those reviewing bodies having penological concerns—such as officials considering whether to transfer an inmate to another institution and parole boards making parole decisions—as well as those reviewing bodies more interested in the fairness and constitutional propriety of the proceeding—for example, state officials, the public, and the courts.

Brown v. Frey, 807 F.2d 1407, 1410 (8th Cir. 1986)(citing Morrissey v. Brewer, 408 U.S. 471, 489 (1972)).  However, due process does not require "technical and detailed disciplinary reports."  Wilson, 636 F.2d 1166, 1168 (8th Cir. 1981).  The written statement requirement is "satisfied if the written statement, even though 'sparse in content,' is 'sufficient to inform [the inmate] of the evidence relied upon by the factfinders in reaching their decision to take disciplinary action.'" Brown, 807 F.2d at 1412.

Here, prior to the prison disciplinary hearing, the Petitioner was provided notice that he

was being charged with possessing contraband (DOC rule 386), interference with security

procedures (DOC rule 170), and unauthorized, control, theft or possession (DOC rule 190).

(Fink Aff., App. C.42).  After the disciplinary hearing, the prison hearing officer found him

guilty of possessing contraband (DOC rule 386), interference with security procedures (DOC

rule 170), and unauthorized, control, theft or possession (DOC rule 190) and he was sentenced to

segregation and had six days of time added to his sentence.  Id. at App. C.43. The Petitioner was

provided notice of the conviction in a document entitled "Hearing Findings." Id.  This document

laid out each offense that the Petitioner was found guilty of and the sentence for each violation in

the "Rule Violation" section.  Id.  Moreover, the document listed the witnesses who testified, the

evidence relied upon, and the reasoning of the hearing officer.  Id.  The document clearly listed

the violations and the reasons for the disciplinary actions taken.  In addition, the document

provides an adequate basis for a reviewing body to analyze the conviction because it provides the

hearing officer's reasoning, evidence relied upon, and conclusions.  Thus, the "Hearing

Findings" comply with the requirements of the due process clause.

Petitioner argues, however, that because of the fact that the Washington County state

district court later concluded that it was "clear that the materials were contraband because they

were not specifically allowed by the warden and they are not on the allowed list," the original

hearing findings regarding security risks are no longer sufficient under the due process clause.

(Fink Aff., App. B.6).  However, the Court finds this argument to be unpersuasive.   In the

hearing findings, the disciplinary hearing officer primarily focused on the security issue.  In

contrast, the state district court focused on the Petitioner's violation of DOC rule 386 for

possessing contraband.  However, the prison disciplinary hearing findings specifically stated that

the Petitioner violated DOC rule 386.  Thus, the Petitioner was properly notified that the

documents he possessed were found to be contraband.  Petitioner, thereafter, had the opportunity

to challenge this contraband determination on a habeas petition and argue that the materials were

not actually contraband under DOC rules if he chose to.  The state district court then relied on

the contraband finding in its determination.  Thus, the state district court did not change the

reason for Petitioner's disciplinary conviction, but instead appears simply to have not needed to

reach the alternative rational of the hearing officer concerning a security risk once it was

determined that the record supported the finding that the documents found in the Petitioner's cell

were contraband in and of themselves.  Petitioner has presented no authority, nor is the Court

aware of any such authority, suggesting that a state district court is required to affirm each and

every alternative analysis of the disciplinary hearing officer or risk violating the due process

clause.[8]  Thus, the Court concludes that the due process clause was not violated in this case.

---

[8] In support of his present argument that the Washington County state district court changed the reason for the original disciplinary conviction, Petitioner also relies on <u>Moore v. Plaster</u>, 266 F.3d 928 (8th Cir. 2001) for the proposition that "conclusory statements of a reporting officer without other evidentiary support are insufficient to sustain a prison disciplinary conviction."  (Petr's Reply, p. 7).  However, this reliance is misplaced.   As the Eighth Circuit explained in <u>Moore</u>,

> three prison disciplinary actions were at issue. The evidence available to support the first  and third disciplinary actions against the inmate consisted <u>only</u> of the investigator's report, which included a bare accusation that the inmate conspired to have narcotics      brought into the facility. The investigator's report was not based upon the investigator's  personal knowledge. Thus, this court found the report was insufficient to qualify as    "some evidence" of a rules violation. . .

> The second disciplinary action in <u>Moore</u> was supported by the observations of the reporting officer. However, the reporting officer's observation was again only conclusory in nature, and was also supported by a notation in the report that "Investigator Plaster  stated that inmate Moore failed the [lie detector] exam." Our court noted, "[o]rdinarily, the Investigator's statement of the test results would be 'some evidence,' but here that very statement is itself alleged to be retaliatory." The court found this statement could not constitute "some evidence" sufficient enough to support a rule violation.

<u>Hartsfield v. Nichols</u>, 511 F.3d 826, 830 (8th Cir. 2008) (internal quotations and citations omitted).
    In contrast, in the case now before the Court, the disciplinary hearing officer did not rely solely on the investigator's report.  Moreover, the investigator's report was based on his own personal knowledge because he had a firsthand opportunity to examine the evidence and did not "simply contain bare accusations that a rule was violated."  <u>Id</u>.  In addition, unlike in <u>Moore</u>, the Petitioner does not contend that the statements of the investigator in this case were retaliatory.  In addition, <u>Moore</u> did not address the issue the Plaintiff raises here – namely whether a state court reviewing a prison disciplinary hearing finding can affirm just one but not all of the hearing officer's alternative rationales for finding a violation of DOC rule 386 in the present case.

For these reasons, the Court recommends that the Petitioner's writ for habeas corpus be denied as to this issue.

## IV.    CERTIFICATE OF APPEALABILITY

The Court grants a Certificate of Appealability where the petitioner makes a substantial showing of the denial of a constitutional right.  See, 28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 523 (8th Cir. 1997). To succeed, the Petitioner must show that the issues are "debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994).  Here, the Court finds it improbable that any other court would decide the issues Petitioner presents any differently or find that any issue raised by the Petitioner warrants further proceedings.  Thus, the Court further recommends that Petitioner not be granted a Certificate of Appealability.

## V.    RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED:**

1.    That Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Docket No. 1] be **DENIED;**

2.    That this action be **DISMISSED WITH PREJUDICE;** and

3.    If the District Court adopts this Report and Recommendation, a Certificate of Appealability should not issue.

Dated:  May 22,  2012                                    s/Leo I. Brisbois
                                                         LEO I. BRISBOIS
                                                         United States Magistrate Judge

### N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by June 5, 2012**, a writing that

specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.